ORDERED in the Southern District of Florida on  06/04/10.



_____
Raymond B. Ray, Judge
United States Bankruptcy Court

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Broward Division

| | |
|---|---|
| In re: | Case No. 09-34791-BKC-RBR |
| ROTHSTEIN ROSENFELDT ADLER, P.A., | Chapter 11 |
| Debtor. _____/ | |
| EDWARD F. NAPLETON, | Adv. No. 10-1001-BKC-RBR-A |
| Plaintiff, | |
| vs. | |
| HERBERT STETTIN, AS CHAPTER 11 TRUSTEE FOR THE ESTATE OF ROTHSTEIN ROSENFELDT ADLER, P.A., | |
| Defendant. _____/ | |

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
### FILED BY PLAINTIFF EDWARD F. NAPLETON

THIS MATTER came before the Court for hearing on April 23, 2010, upon the Motion for Summary Judgment [D.E. 14] filed by Plaintiff Edward F. Napleton ("Napleton"), and the response thereto [D.E. 33], filed by Defendant Herbert Stettin (the "Defendant" or the "Trustee"), as Chapter 11 Trustee for the Estate of Rothstein Rosenfeldt Adler, P.A. After reviewing the contents of the case file and hearing arguments from counsel, the Court will grant

the Motion for Summary Judgment as set forth herein.

## I. BACKGROUND AND PROCEDURAL HISTORY

Petitioning creditors Roger Wittenberns, Bonnie Barnett, Aran Development, Inc. and Universal Legal filed an involuntary petition under chapter 11 of the Bankruptcy Code against Rothstein Rosenfeldt Adler, P.A. (the "Debtor" or "RRA") on November 10, 2009. The Court entered an order for relief on November 30, 2009.

Napleton, individually and as a principal of several companies in the business of operating automobile dealerships, was a client of RRA. On two separate occasions during the second half of 2009, Napleton forwarded $500,000 deposits to RRA. On the first occasion, Napleton provided the deposit in the form of a check, for the purpose of establishing a separate, segregated, interest-bearing escrow account in connection with the proposed purchase of an automobile dealership from a bankruptcy estate. The check was directly deposited into a new, segregated trust account established for that purpose, in the name of RRA, f/b/o [for the benefit of] Edward Napleton. The account number of the first segregated trust account ended in 2443.

The second trust deposit was slightly different. Napleton remitted the second $500,000 by wire transfer to an RRA Real Estate Trust Account at Gibraltar Bank whose number ended in 5443, on October 19, 2009. Pursuant to the client's instructions, the accounting department at RRA was directed to transfer the $500,000 from the Real Estate Trust Account into a second new, segregated interest-bearing trust account for the benefit of Napleton, opened under his Social Security number. (Napleton had previously provided a W-9 Form to RRA to give RRA his Social Security number and pertinent information.)

On October 23, 2009, a check was issued from the RRA General Real Estate Trust Account at Gibraltar Bank whose account number ended in "5443," and on October 26, 2009

(the following Monday) the $500,000 check cleared into the second new, segregated interest-bearing account in the name of "RRA, f/b/o Edward Napleton". The number of the newest account, also at Gibraltar Bank, ended in 2555.

During the time between the October 19 arrival of Napleton's funds in the Real Estate Trust Account whose number ended in 5443, and clearance of the $500,000 check into the second new account whose number ended in 2555 on October 26th, the balance in the Real Estate Trust Account never fell below $543,478.81.[1] The Court thus concludes that Napleton's second deposit is traceable into the second segregated account ending in 2555.

Therefore, on the date of commencement of this bankruptcy case, Napleton was the named beneficiary of two separate, segregated escrow accounts maintained by RRA for him: the first, whose account number ended with 2443, holding the principal amount of $500,000, plus accrued interest; and the second whose account number ended with 2555, holding the principal amount of $500,000, plus accrued interest.

The Trustee retains custody of the accrued interest from the first segregated account and $500,000, plus accumulated interest, from the second Napleton account.

Napleton commenced this adversary proceeding on January 4, 2010, by filing the two count *Complaint for Declaratory Relief, Imposition of Equitable Lien and/or Constructive Trust, and Turnover of Non-Estate Funds to the Owner* (the "Complaint") [D.E. 1].

The first count seeks a declaratory judgment that Napleton is the beneficial owner of the proceeds of both separate, segregated interest bearing trust accounts; as a consequence, Napleton asks that the Defendant be ordered to turn over the remaining proceeds of both accounts, including the accumulated interest, to him. The Defendant has already surrendered the sum of $500,000 to Napleton.[2]

---

[1] See Affidavit of Richard A. Pollack, C.P.A. [D.E. 34], Exhibit 2, page 11.
[2] This payment represented the return of the proceeds of the principal of the first segregated trust account ending in 2443, without the accumulated interest.

The second count of the Complaint, pleading in the alternative, seeks the imposition of a constructive trust on the proceeds of the two segregated trust accounts. Since the Court concludes that Napleton beneficially owns the proceeds of the two separate, segregated trust accounts, the second count of the Complaint will be dismissed as moot.

## II. ANALYSIS

### A. Jurisdiction and Venue

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

### B. Standards for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the pleadings and depositions, together with any affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is deemed material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* at 247.

The moving party has the initial responsibility of informing the court of the basis for its motion and of identifying those portions of the pleadings, depositions and any affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). In deciding whether the movant has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-movant. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1532 (11th Cir. 1992). The burden then shifts to the non-moving party to designate specific facts showing that there is a genuine issue of

material fact. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

In this case, the Court concludes that there are no genuine issues of material fact and the case is ripe for summary judgment.

### C. Application of State Law to Determine What is Property of the Estate

Section 541(a) of the Bankruptcy Code states in part that the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." Notwithstanding the scope of the language used in § 541(a), the estate's legal and equitable interests in property are no higher or better than those of the debtor. *See In re Engman*, 395 B.R. 610, 617 (Bankr. W.D. Mich. 2008). Property interests in bankruptcy are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979); *In re Porterfield*, 331 B.R. 480, 482 (Bankr. S.D. Fla. 2005).

### D. Rules Concerning Attorney Trust Accounts

On the date that the involuntary bankruptcy case was filed against RRA, it is undisputed that Napleton's funds resided in two separate, segregated interest bearing trust accounts for his benefit. State law, in the form of the Florida Bar Rules, states that trust funds deposited by a client into a law firm trust account are not only in trust, but they are the identifiable property of the client.

#### 1. Attorney Trust Accounts are Identifiable Property

Rule 5-1.1(a)(1), Rules Regulating The Florida Bar, governs trust accounts and provides in pertinent part:

> **Trust Account Required; Commingling Prohibited.** A lawyer shall hold in trust, separate from the lawyer's own property, funds and property of clients or third persons that are in a lawyer's possession in connection with a representation. All funds, including advances for fees, costs, and expenses, shall be kept in a separate bank or savings and loan association account maintained in the state where the lawyer's office is situated or elsewhere with the consent of the client or third person and clearly labeled and designated as a trust account.

Here, Napleton's funds were in two separate, segregated interest-bearing trust

accounts for Napleton's benefit, using his social security number, when the bankruptcy case commenced.

Rule 5-1.1(b), Rules Regulating The Florida Bar, also governs trust accounts and provides in pertinent part:

> **Application of Trust Funds or Property to Specific Purpose.** Money or other property entrusted to an attorney for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied only to that purpose.

Thus, according to the Florida Bar Rules governing law firm trust accounts, the trust funds deposited by Napleton into the trust account with the number ending in 5443 maintained Napleton's property interest and were never a part of the assets of RRA.

## 2. Trust Accounts Are Not Part of the Bankruptcy Estate

Pursuant to 11 U.S.C. § 541(a), an estate is created on the commencement of a case under section 303 of the Bankruptcy Code. Generally, the estate consists of all legal or equitable interests of the debtor in property as of the commencement of the case. However, it is well established that where a debtor holds property impressed with a valid trust, the estate will generally hold that property subject to the interest of the beneficiary. *In re Felton's Foodway, Inc.*, 49 B.R. 106, 108 (Bankr. M.D. Fla. 1985). Accordingly, "[p]roperty that a debtor holds in escrow or trust is not property of the estate under 11 U.S.C. § 541." *Hayim v. Goetz (In re SOL, LLC)*, 419 B.R. 498, 505 (Bankr. S.D. Fla. 2009) (citing *Dzikowski v. NASD Regulation, Inc. (In re Scanlon)*, 239 F.3d 1195,1197–98 (11th Cir. 2001)).

Moreover, under Florida law, "legal title to the property placed in an escrow account remains with the grantor until the occurrence of the condition specified in the escrow agreement." *Dzikowski*, 239 F.3d at 1197–98 (quoting *Dickerson v. Central Fla. Radiation Oncology Group*, 225 B.R. 241, 244 (Bankr M.D. Fla. 1998)). Thus, "funds that are deposited into an escrow account by a debtor, for the benefit of others, cannot be characterized as property of the estate." *Dzikowski*, 239 F.3d at 1198 (quoting *In re S.E.L. Maduro*, 205 B.R. 987, 990–91 (Bankr. S.D. Fla. 1997)).

The Trustee has conceded that the trust funds at issue are not the property of the RRA Bankruptcy Estate (*See* Amended Response to Request for Admissions CP 30, at Request No. 23). This Court agrees.

### E. The Trustee's Arguments

According to long standing principle, general creditors have no right to have their claims paid out of property or its proceeds that have never actually belonged to the insolvent trustee, if the property in question can be sufficiently identified or traced as to justify its separation from the corpus of the trustee's estate. *Myers v. Matusek,* 98 Fla. 1126, 1143 (Fla. 1929); *In re First Fid. Fin. Servs., Inc.*, 36 B.R. 508, 510 (Bankr. S.D. Fla. 1983). Trust funds must be strictly traceable to particular property that is capable of clear identification. *In re First Fid. Fin. Servs., Inc.*, 36 B.R. at 510. Similarly, under Florida receivership law, where "the deposit is in the form of cash, and was made shortly before the bank went into the hands of the receiver, and the cash on hand was, at all times after the deposit was made, equal to or more than the amount of the deposit, all the courts agree that the depositor should have a preference over the general creditors". *Myers v. Matusek,* 96 Fla. at 1137–38.

The Trustee argues that where there is insufficient money in the general trust account to fully reimburse all claimants who thought they had money in that general trust account, then the available proceeds should be prorated. The Trustee attempts to support his argument with two primary authorities, *First State Trust and Savings Bank of Springfield v. Therrell,* 103 Fla. 1136 (Fla. 1932), and *United States v. Ramunno,* 599 F.3d 1269 (11th Cir. 2010). Both cases are inapposite to this adversary proceeding.

In *First State Trust,* the Florida Supreme Court dealt with the question of whether preferred claimants should share available funds *pro rata* when the total assets of an insolvent trust company are inadequate to pay the preferred claims. However, the facts in *First State Trust* are distinguishable from this case. There, the Florida Supreme Court was dealing with funds in one commingled common fund where trust funds were regularly commingled with

general deposits, and where securities would be purchased from funds paid out of the general account, but drawn from various accounts, such that the commingled funds represented an "inextricable compound that no alchemist would . . . attempt to unscramble." 103 Fla. at 1149. That fact pattern is clearly distinguishable from this case, where the funds that Napleton seeks never lost their identity or passed into the hands of another. *See First State Trust*, 103 Fla. at 1149.

*Rammuno* is likewise inapplicable to the facts in this case. In *Rammuno*, the defendant operated a Ponzi scheme and had agreed to forfeit funds that the government had seized. One customer had invested a large sum of money just before the government seizures and claimed that he could trace his funds directly to the forfeited funds. He sought to impose a constructive trust for his benefit on the funds.. As already noted, Napleton does not seek to impose a constructive trust upon the funds he seeks to have returned. Since the funds were held in an actual segregated trust, no constructive trust need be imposed to justify their return to Napleton.

### F.      The Trustee Has No Claim Against Napleton's Funds

The Trustee has conceded that the proceeds of the two separate, segregated interest-bearing trust accounts are not property of the Estate. The Court concludes that they are beneficially owned by Napleton. Even so, Trustee still argues that other unidentified clients and/or customers of RRA who thought they had money in the Real Estate Trust Account whose number ends in 5443, may have some claim against the funds which were paid out of that account on October 26, 2009, in order to fund Napleton's second segregated trust account whose number ends in 2555. Whether or not such theoretical claims may exist as a matter of law, or whether such claims have any validity at all, is not before this Court. This Court neither endorses nor rejects the concept of such claims. Suffice it to say that this adversary proceeding is a two-party dispute between Napleton and the Defendant over entitlement to the proceeds of two separate, segregated interest-bearing trust accounts, and this judgment is

without prejudice to any other claims which may or may not exist by, between, or among other parties.

### III. CONCLUSION

The Court being otherwise fully advised in the premises, it is

**ORDERED** as follows:

1. The Motion for Summary Judgment [D.E. 14] is **GRANTED** as set forth herein.
1. Summary judgment is entered in favor of Napleton and against the Trustee with respect of Count I of Plaintiff's Complaint.
2. The Trustee shall forthwith turn over to Napleton the following sums representing the proceeds of the referenced segregated trust accounts as follows:
    (a) The accumulated interest with respect to the first segregated account ending in 2443, (the Trustee having already turned over the $500,000 in proceeds of the principal to Napleton),
    (b) The $500,000 in proceeds of the principal with respect of the second segregated account whose number ended in 2555, and
    (c) The accumulated interest with respect of the second $500,000.
3. The Court reserves jurisdiction to resolve any dispute which may arise over the exact measure of the accrued interest and to enforce the terms of this order.
4. Count II of the Complaint is dismissed as moot.
5. Napleton is entitled to judgment for his costs, consisting of the filing fee for this adversary proceeding in the amount of $250.00, for which let execution issue.

###

The Clerk shall provide copies to:

Ronald Neiwirth, Esq.

Attorney Neiwirth is directed to serve a conformed copy of this order upon all interested parties and to file a certificate of service in conjunction therewith.